**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| WESLEY YOUNG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:14-cv-491-JMS-MJD |
| ANDREW COLE, Assistant Superintendent of Re-Entry, et al., | ) ) ) ) |
| Defendants. | ) ) |

**Entry Discussing Defendants' Motion for Summary Judgment and Directing Entry of Final Judgment**

**I. Background**

Plaintiff Wesley Young ("Mr. Young") has been incarcerated at the Pendleton Correctional Facility ("PCF") at all times relevant to this action. In his amended complaint, filed on July 17, 2014, Mr. Young alleges that the defendants unlawfully deprived him of or failed to reinstate his visitation rights because of his race in violation of his equal protection rights protected by the Fourteenth Amendment.

The four defendants, Superintendent Zatecky, Assistant Superintendent Andrew Cole, Jack Binion, and Tom Francum, have filed a motion for summary judgment seeking resolution of the claims against them based on the affirmative defense that Mr. Young failed to exhaust his available administrative remedies prior to filing the amended complaint. Mr. Young has opposed the motion for summary judgment and the defendants replied.

For the reasons explained in this Entry, the defendants' motion for summary judgment [dkt. 37] must be **granted.**

## II. Discussion

*A.    Legal Standards*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to

properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

  B. *Undisputed Facts*

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Young as the non-movant, are undisputed for purposes of the motion for summary judgment:

The Offender Grievance Process, Policy and Administrative Procedure 00-02-301 ("Offender Grievance Process"), is in place at PCF, and that program has been continually in place since January 1, 2010. The purposes, rules, and procedures of this grievance program are set forth in the Offender Grievance Process, which was in effect and readily available to offenders at all times relevant to this action. The Offender Grievance Process includes an attempt to resolve the complaint informally, as well as two formal steps – a formal written grievance and then an appeal of the response.

The Offender Grievance Process sets forth various deadlines so that the Indiana Department of Correction ("IDOC") can achieve its goals of providing a grievance program that is responsive to offenders' concerns. According to the Offender Grievance Process, an attempt to informally resolve the complaint must be made as soon as possible and in no case should the time period be more than five (5) working days from the date of the incident. The first formal grievance must be submitted within twenty (20) working days from the date of the incident. The Executive Assistant then has two (2) working days to review and log the formal grievance, or return it to the

offender with an explanation as to why it was returned and how it may be corrected. Once the grievance is logged, the Executive Assistant or her designee has fifteen (15) working days to respond to the grievance. If the formal grievance is not resolved in a manner that satisfies the offender, he may file an appeal with the IDOC's Offender Grievance Manager within ten (10) working days of the formal grievance response. The appeal must address the same issue raised in the formal grievance.

At PCF, every housing unit has locked counselor's boxes where offenders can deposit their grievances. The counselors are the only individuals who have keys to those boxes. The boxes are emptied daily.

There are also grievance boxes located on both sides of the dining hall. Only Wayne Scaife and Grievance Coordinator Jessica Matthews (formerly Hammack) empty those boxes. Offenders can also place their grievances in the mail bag at night which are then delivered to Ms. Matthews each morning. Ms. Matthews is in the dining hall once a week, usually on Fridays, and offenders may also give their grievances directly to her at that time.

On December 26, 2013, Mr. Young was found guilty of making/possessing intoxicants. Possession of intoxicants is a violation of prison policy. The December 2013 disciplinary conviction followed two previous convictions. On January 8, 2014, Mr. Binion, acting as Superintendent Zatecky's designee, approved the permanent revocation of Mr. Young's visitation privileges.

On January 30, 2014, sixteen (16) working days after Mr. Young's visitation privileges were revoked, Mr. Young informally requested that Superintendent Zatecky and Mr. Binion rescind the revocation order. On February 6, 2014, Mr. Young submitted a formal grievance, which was denied for not meeting the time requirement and for being incomplete.

The February 6, 2014, grievance stated, "This is the 2nd grievance that I filed in regard to my complaint. I filed the the (sic) 1st one in December of 2013 or the 1st week of Jan of 2014. See attached sheet." Dkt. 38-3, p. 1. On the sheet attached to the grievance, Mr. Young explained that Mr. Binion, Mr. Cole, and Superintendent Zatecky did not follow the visiting policy and did not take his visits for a justifiable reason. He concluded with his assertion that "My Const. right to be treated without cruelty and unnecessary vigor is being violated against my Amendments, 5th, 8th and 14th Amend rights." Dkt. 38-3, p. 2.

When he filed his amended complaint on July 17, 2014, Mr. Young attached exhibit "H", alleging that it is a copy of the first grievance he filed concerning the claim in this case. This grievance is dated January 8, 2014. The defendants state that no January 8, 2014, was ever received by prison staff.

C.  *Analysis*

The defendants argue that Mr. Young filed his February 6, 2014, grievance on the 21st day after the alleged incident, one day late. In addition, they argue that Mr. Young never filed a grievance relating to the only claim that has been allowed to proceed in this action, that his visitation privileges were revoked on January 8, 2014, because of his race.

Mr. Young contends that he timely filed his February 6, 2014, grievance. He asserts that the defendants miscalculated the number of days that passed between the date his visitation privileges were revoked and the date he filed his grievance. The Court agrees.[1] The Court finds further, however, that whether Mr. Young's February 6 grievance was timely or not is not dispositive in this action because that grievance did not allege that the revocation of his visitation privileges was based on race. Even assuming it was timely filed, nothing in the February 6, 2014,

---

[1] The Court concludes that, excluding the Martin Luther King holiday on January 20, 2014, the 20th working day after January 8, 2014, was February 6, 2014, the date the grievance was filed.

grievance put the defendants on notice that Mr. Young claimed that racial discrimination was the cause of the visitation sanction. The February 6, 2014, grievance did not address the claim in this action.

Thus, the paramount issue is whether Mr. Young completed the exhaustion process by filing any other grievance that did raise the issue of racial discrimination. Mr. Young attached to his amended complaint a copy of a grievance dated January 8, 2014, which stated "Jack Binion Administrative Asst, Cole Asst Supt, Tom Francum or Thomas Francum and Zatecky, Supt. didn't follow policy when they took my visits permanently. See attached sheet. They discriminated against me." Dkt. 26-1, p. 10; Dkt. 38-5, p.1. In his sworn declaration, Mr. Young states that he "did file a formal grievance relative to discrimination and my visits being taken by the Defendants in December 2013, or the first week of 2014." Dkt. 44, ¶ 5. Mr. Young does not specifically state in his declaration how or where he submitted the January 8, 2014, grievance. Dkt. 44. He states under penalty of perjury that the normal manner for turning in a grievance at PCF is "by placing it in the counselor's box in the unit that you are living in." Dkt. 44, ¶ 8. He alleges in his response brief that in either December of 2013 or the first week of January 2014 he placed the grievance in the counselor's box in his unit. Dkt. 42, p. 8. Mr. Young states that he never received a response to this grievance, so he filed the second one on February 6, 2014. The defendants have no record of having received a grievance filed by Mr. Young on or about January 8, 2014.

Although there is a disputed question of fact as to whether Mr. Young did, in fact, file a grievance on or about January 8, 2014, even if the Court assumes for purposes of this motion that Mr. Young's version of the facts is true, he still has not shown that he completed the exhaustion process with respect to that grievance. It is undisputed that Mr. Young received no response to a January 8, 2014, grievance. The Offender Grievance Process provides that "[i]f an offender does

not receive either a receipt or a rejected form from the Executive Assistant within seven (7) working days of submitting [a grievance], the offender shall immediately notify the Executive Assistant of that fact (retaining a copy of the notice) and the Executive Assistant shall investigate the matter and respond to the offender's notification." Dkt. 38-1, p. 17, Offender Grievance Process, No. 00-02-301, Part. XIV, A. Mr. Young did not notify the Executive Assistant that he had submitted a grievance but had received no response within seven working days. Section XIV, Part E of the Offender Grievance Process also provides that "[i]f the offender receives no grievance response within 25 working days of the day he or she submitted the grievance, he or she may appeal as though the grievance had been denied." Dkt. 38-1, p. 24, Offender Grievance Process, No. 00-02-301. Mr. Young does not allege that he appealed the January 8, 2014, grievance as though it had been denied. Therefore, Mr. Young has not created a genuine issue of material fact as to whether he completed the exhaustion process with respect to the January 8, 2014, grievance. The record is undisputed that Mr. Young did not complete the exhaustion process with respect to the January 8, 2014, grievance.

Under these circumstances, Mr. Young failed to complete the exhaustion process with respect to his equal protection race discrimination claim before he filed his amended complaint. Therefore, in light of 42 U.S.C. § 1997e(a), the claims against the defendants should not have been brought and must now be dismissed without prejudice. *See Ford,* 362 F.3d at 401 ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

## III. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment [dkt. 37] is **granted.** Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _____05/15/2015_____

*[signature: Jane E. Magnus-Stinson]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Wesley Young, #963551
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN  46064-9001

Electronically registered counsel